1   REPORTER'S RECORD

2   VOLUME 4 OF 12 VOLUMES

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
6/24/2014 4:26:00 PM
CATHY S. LUSK
Clerk

3   TRIAL COURT CAUSE NO. 114-0648-13

4   STATE OF TEXAS                    )   IN THE DISTRICT COURT
                                      )
5                                     )
                                      )
6                                     )
    VS.                               )   SMITH COUNTY, TEXAS
7                                     )
                                      )
8                                     )
                                      )
9                                     )
    JOSEPH PIERCE                     )   114TH JUDICIAL DISTRICT
10

11  ************************************************************

12            HEARING ON MOTION FOR JOINDER

13  ************************************************************

14      On the 5th day of August, 2013, the following
    proceedings came on to be heard in the above-styled and
15  -numbered cause before the HONORABLE CHRISTI J. KENNEDY,
    Judge Presiding, held in Tyler, Smith County, Texas:
16
    Proceedings reported by Computerized
17  Machine Stenography, Reporter's Record produced by
    Computer-Assisted Transcription.
18
    Court Reporter: CASSIE CONDREY.
19                  Texas CSR #9035
                    Official Court Reporter
20                  114th Judicial District Court
                    212 Smith County Courthouse
21                  Tyler, Texas 75702
                    (903) 975-4331
22

23

24

25

1          A P P E A R A N C E S

2

3    FOR THE STATE:
          Mr. Jacob Putman
4          SBOT NO.:  24065929
          Smith County District Attorney's Office
5          100 North Broadway Avenue
          Fourth Floor
6          Tyler, Texas  75702
          Telephone: (903) 590-1713

7

8

     FOR THE DEFENDANT (JOSEPH PIERCE):
9          Mr. Jason A. Ellis
          SBOT NO.:  24052915
10         Law Offices of Jason A. Ellis
          120 South Broadway Avenue
11         Suite 109
          Tyler, Texas  75702
12         Telephone:  (903) 705-6236

13

14   FOR THE DEFENDANT (MARLINA ADAMS):
          Mr. Brent Ratekin
15         SBOT NO.: 24043886
          Ratekin Law Firm
16         422 South Spring Avenue
          Tyler, Texas  75702
17         Telephone: (903) 595-1516

18

19

20

21

22

23

24

25

1                          INDEX

2

3    Appearances                                    2

4    Reporter's Certificate                        18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                P R O C E E D I N G S
2               THE COURT:  All right.  Cause numbers
3    114-0642-13, 0648-13.  State of Texas versus
4    Marlina Adams and Joseph Pierce.  Counsel for the State
5    and counsel for each of the defendants is present.  Also
6    the defendants, Joseph Pierce and Marlina Adams, are
7    present.
8               Ms. Adams and Mr. Pierce, you-all may come
9    up here and have a seat at the counsel table next to
10   your respective attorneys.
11              All right.  Is the State ready on these
12   motions?
13              MR. PUTMAN:  We're ready, Your Honor.
14              THE COURT:  The defense is ready?
15              MR. RATEKIN:  Ready, Your Honor.
16              THE COURT:  Mr. Ellis?
17              MR. ELLIS:  Ready, Your Honor.
18              THE COURT:  All right.  Then the State may
19   proceed on its motion.
20              MR. PUTMAN:  Your Honor, we filed the same
21   motion in each case to join these defendants.  Under
22   Code of Criminal Procedure 36.09, the Court can order
23   cases be tried jointly in the Court's discretion.
24              We filed that because really it's the same
25   witnesses, same transaction occurring.  This is a joint
```

1  possession case.  The drugs were found in the car where

2  the two defendants were.  One was driving; one was the

3  front-seat passenger.  And given that the evidence will

4  be --

5              THE COURT:  Well, that's the allegation.

6              MR. PUTMAN:  That's the allegation.

7              THE COURT:  Right.

8              MR. PUTMAN:  Given that that would be the

9  evidence that the State would be putting on, the

10  evidence would be virtually identical in each case.  It

11  would be in the interest of justice and judicial economy

12  to try them together and that's why we filed a motion.

13              THE COURT:  Either Mr. Ratekin or

14  Mr. Ellis, do you wish to be heard on this motion?

15              MR. RATEKIN:  Your Honor, I filed an

16  objection to the joinder.  Basically, Your Honor, if the

17  cases were tried together it would put Ms. Adams at a

18  disadvantage because our entire defense would be -- we

19  wouldn't be able to put on our entire defense the way we

20  want to if they're joined together.

21              Mr. Pierce has prior felony convictions,

22  which we would be introducing to show in our trial as

23  well as other trial strategies.  Our defense is going to

24  be pointing a finger towards Mr. Pierce.  That would be

25  hampered if they were joined together.

1          I don't believe that joining the cases

2    together would be appropriate in this situation.  While

3    what Mr. Putman said is true--it basically would be

4    quite a lot of the same facts--there is evidence going

5    against Mr. Pierce that does not apply to Ms. Adams.

6    There's more evidence against Mr. Pierce than there is

7    against Ms. Adams and that would put Ms. Adams at a

8    disadvantage in the trial.

9          If the jury convicts Mr. Pierce, then

10   they're probably going to convict Ms. Adams as well.  We

11   can't allow Ms. Adams to be tried at the same time and

12   put on our whole entire proper defense with them joined

13   together.  That's the big -- or one of the big things,

14   as well as the fact that we wouldn't be able to use the

15   defense that we need to use properly.

16          THE COURT:  Mr. Ellis, do you want to be

17   heard on this?

18          MR. ELLIS:  Briefly, Your Honor.

19          I concur with what Mr. Ratekin said.  As I

20   read 36.09 of the Code of Criminal Procedure, one of the

21   issues the Court has to consider is--really more for

22   Ms. Adams' case than in my client's case--that my client

23   has a prior felony conviction.

24          Obviously we would object to a joinder of

25   the cases where Mr. Ratekin would be introducing

1   evidence that otherwise might not ever be admissible

2   against my client were he not to take the stand or the

3   State finds some other prior felony conviction.  I think

4   it's pretty clear that that could be highly prejudicial

5   on the trial of this matter.

6              Furthermore, Mr. Ratekin has suggested -- I

7   believe it's very possible that the defenses for both

8   codefendants could be antagonistic to one another so it

9   would be prejudicial to both clients.  We ask the Court

10  to deny the State's motion to join.

11             THE COURT:  And you-all are suggesting--and

12  I just want to make sure this is clear--that -- are

13  you-all suggesting or telling the Court that there is a

14  previous admissible conviction against Mr. Pierce that

15  would not be admissible against Ms. Adams?

16             MR. RATEKIN:  That's correct, Your Honor.

17             THE COURT:  Do you agree with that,

18  Mr. Putman?

19             MR. PUTMAN:  Well, I don't think it's

20  admissible so I disagree.  I don't think it would be

21  admissible at the trial.  Again, in either trial so --

22  and I agreed in my motion that if they were joined, we

23  wouldn't -- the State wouldn't be seeking to admit it.

24  But even if we didn't have that agreement, I don't think

25  it would be admissible.

1          MR. RATEKIN:  I believe it would be

2    admissible because our first witness would be

3    Mr. Pierce.  So it would definitely be admissible.  And

4    whether the State's willing to use it or not, I plan on

5    using it if the cases are joined together.

6          THE COURT:  And Mr. Pierce would be willing

7    to testify?

8          MR. RATEKIN:  I can't -- I can't answer

9    that question; he's not my client.  But he would be my

10   first witness.

11         THE COURT:  Mr. Ellis?

12         MR. ELLIS:  Your Honor, I can't say what's

13   going to be admissible or not.  I would think that --

14   generally speaking, I would think it would be

15   admissible, but I don't know what Mr. Ratekin might do

16   in preparing his defense or what the State might do.

17         THE COURT:  Did you say generally it might

18   or might not be admissible?

19         MR. ELLIS:  I wouldn't have expected it to

20   be admissible, but if the codefendant -- with the cases

21   being joined, Your Honor, I would think it could be

22   admissible.  I don't know.  My thought would be that it

23   wouldn't be, but it seems like trials have a way of

24   surprising, Your Honor.  You never know what might

25   happen.

1          I believe -- Your Honor, I also believe

2  beyond the prior conviction of Mr. Pierce, generally

3  speaking, the defenses would still be antagonistic and

4  it would be improper to join the cases.

5          THE COURT:  Mr. Putman, did you have

6  something else you wanted to add to that?

7          MR. PUTMAN:  I just wanted to state,

8  Your Honor, Qualley v. State --  it's a 2006 case.

9          THE COURT:  I'm looking at it, too.

10          MR. PUTMAN:  It requires a showing of

11  prejudice to show a specific trial right would be

12  prejudiced to either one of the defendants.  I don't

13  think we have that here.  I think Mr. Ellis or

14  Mr. Ratekin might need to put on something to show what

15  trial -- specific trial right would be prejudiced.

16          Mr. Ratekin indicated that part of -- I

17  think what he was looking for in his defense is that

18  Mr. Pierce would be testifying -- called to testify as a

19  codefendant.  In order for that to be a trial right that

20  he would be prejudiced, he would have to show, under

21  Lacy v. State, a bona fide need for the testimony; the

22  substance of the desired testimony; its exculpatory

23  nature and effect; and evidence that the designated

24  codefendant will in fact testify if the trials were

25  separated.

1      So there would have to be a showing of

2  that.  That would be something the defense would have to

3  show if they're going to show a right's been prejudiced.

4  I haven't heard that yet.  Obviously we're not done with

5  the hearing, so maybe it will be shown.

6      But if the only way Mr. Ratekin is

7  anticipating on getting in Mr. Pierce's prior was him

8  testifying, I think there would have to be a showing

9  first that he would in fact testify if Mr. Ratekin

10 called him to the stand.  I obviously don't know that

11 either since I'm not allowed to talk to Mr. Pierce and

12 Ms. Adams without their attorneys.

13     But I don't think there's been a showing of

14 that yet:  that there's been any specific trial right

15 that would be prejudiced to either defendant.  And,

16 again, we've agreed if the cases were joined we wouldn't

17 be seeking to introduce Mr. Pierce's prior so that it

18 wouldn't -- which would be a prejudice to Ms. Adams if

19 we were seeking to do that.

20     If Mr. Ratekin wanted -- had a joint trial

21 to put on the prior of Mr. Pierce to try to blame

22 Mr. Pierce -- I think if it was admissible, he's

23 certainly willing to do that since it would be him

24 putting in the prior.  It wouldn't be us putting in the

25 prior for Mr. Pierce to try to prejudice Ms. Adams.

1   Mr. Adams would be putting it on to try to point the

2   finger at Mr. Pierce.

3              Also, as far as mutually antagonistic

4   defenses, that's not a reason, per se, to sever trials.

5   And there has to be specific prejudice to a specific

6   trial right.

7              THE COURT:  Mr. Ratekin or Mr. Ellis, do

8   you-all wish to be heard on that?

9              MR. RATEKIN:  Your Honor, while I'm not at

10  liberty to discuss my entire trial strategy at this

11  point in time --

12             THE COURT:  I understand that puts you in

13  an awkward position.  Go ahead.

14             MR. RATEKIN:  It does, Your Honor.  But I

15  do believe I would be able to introduce the prior

16  against Mr. Pierce and I do believe that I would be

17  calling Mr. Pierce as a witness.

18             Now, whether he testifies or not -- I can't

19  get in to whether he's going to testify or he's not

20  going to testify.  That's part of the trial strategy and

21  I'm not going to be able to put on my entire trial

22  strategy in front of the DA at this point in time.

23             But with that felony being out there and

24  being admissible, the evidence going more towards

25  Mr. Pierce than Ms. Adams, the defense being, basically,

1  pointing fingers at each other and would be

2  antagonistical against each other, I believe it would

3  jeopardize Ms. Adams' right to a fair trial based on her

4  actions and not Mr. Pierce's actions.  I think it puts

5  her at a disadvantage in trying the case.

6          I do think history, his involvement in the

7  case, his actions after being arrested as well, would

8  all go towards Mr. Pierce.  I believe that would be over

9  on Ms. Adams -- put her in a situation where she's

10  having to negate stuff Mr. Pierce says.  And having the

11  trials at the same time, I think, would be improper in

12  that situation.

13          THE COURT:  Look at --

14          MR. ELLIS:  (Indicating.)

15          THE COURT:  Go ahead, Mr. Ellis.  Did you

16  have something else you wanted to add?

17          MR. ELLIS:  I would just add, Your Honor,

18  as I indicated in my motion, I believe the specific

19  rights that might be indicated are the right to

20  confrontation and the right to cross-examination that

21  might be at issue.

22          I also have trouble, Your Honor, with a

23  joint trial where my client's being forced to refuse to

24  testify when called by co-counsel--I don't know what we

25  would be at this point--in front of the jury, whereas if

1 he were being tried on his own, we would just be able to

2 not take the stand all together.  I don't like the way

3 that's going to look in front of a jury, Your Honor.

4           THE COURT:  All right.  In the Qualley

5 case, of course, they discuss the grounds for severance.

6 The motion for severance is to be timely--of course,

7 this is timely.  It's actually not a motion for

8 severance; it's a motion for joinder because the Court

9 has not joined it in the first place--and that at least

10 one of two possible grounds for severance be alleged to

11 support the evidence.

12           The two grounds of severance are that the

13 codefendant has a previous admissible conviction or the

14 joint trial would prejudice the moving defendant.  It's

15 not -- you don't have to prove both of those; you have

16 to prove one of those.

17           At this stage, the Court cannot really tell

18 and there hasn't been any evidence that there's a

19 previous admissible conviction, although it sounds like

20 there might be.  The Court has not heard the evidence.

21 I'm willing to hear any evidence if you-all have any

22 evidence to offer.

23           But in Qualley, you know, even though that

24 evidence of a prior conviction was not admitted, the

25 court of criminal appeals said not that it was okay to

1   proceed together but that it was harmless error to

2   proceed together when there was an admissible prior

3   conviction for one of the defendants.

4               So the State's offer to not offer that

5   evidence at trial doesn't take us out of the error

6   bracket.  It only takes us out of the harmful error

7   bracket, which is not the bracket I want to be in in the

8   first place.  So if there's evidence of a previous

9   admissible conviction and anybody wants to offer it, I'm

10  willing to hear it.

11              MR. PUTMAN:  And the reason I say I don't

12  belive it's admissible, Your Honor, is I looked at the

13  prior conviction and I just didn't see how--if I was

14  trying to admit it--I was going to be able to get it

15  admitted.  I don't think I could admit it even if I

16  wanted to.  So I don't think it's admissible.

17              Mr. Ratekin has been an attorney longer

18  than I have.  Maybe he knows a way that I don't.  But I

19  can't get it in so that's why I say it's not admissible.

20              And I did read that part about the harmless

21  in the Qualley case.  And the way I was reading it is it

22  would be prejudicial, obviously, for it to be admitted.

23  And that's what the severance is concerned with.  If

24  it's not admitted, then there's no prejudice, is the way

25  I was looking at it.  If the jury doesn't hear about it,

1 then there's no prejudice that would transfer over to

2 either defendant.

3          THE COURT:  It's not very clear, but I do

4 think they're using harmful as a term of art in the

5 sense of harmful error, which means you have to have

6 committed error in the first place.  And they do

7 expressly say the trial court should have severed the

8 cases on evidence of previous admissible convictions.

9          And then they go on to say that it wasn't

10 harmful because they didn't offer any evidence.  So I

11 think they're -- it's a little hard to tell.  You can

12 tell a little bit more from Judge Hervey's concurrence

13 that they do think it's error but harmless.

14          Anything further from the State on its

15 motion?

16          MR. PUTMAN:  No, Your Honor.

17          THE COURT:  Anything further from either

18 defendant on the response?

19          MR. RATEKIN:  Your Honor, the prior felony

20 was actually provided to me by the DA's office on July

21 31st.  I've not had an opportunity to respond or give

22 notice of defense experts in a way to get this

23 information that would be admissible and I'm not going

24 to go in to my trial strategy on that point until I have

25 to.

1       It's my belief that the prior felony would

2   be admissible.  I would do my best to make sure that

3   it's admissible by calling whichever witness I need to

4   call.  But I'm not at a point where I have to disclose

5   my experts on this yet and I'm not going to go over my

6   trial strategy at this point in time.

7       But I do believe that the prior felony that

8   Mr. -- felonies that Mr. Putman provided to me would

9   become an issue.

10      THE COURT:  All right.  The Court is

11  reviewing the State's notice of intent to offer evidence

12  under 404 (b), 609, and 37.07 as a part of the Court's

13  file.

14      It does list five prior convictions.  The

15  Court is not aware that those would be admissible.  The

16  Court is not aware of anything about those as to the

17  level of felonies or misdemeanors those might be.

18      The Court is going to place these two cases

19  on the trial -- same trial docket and carry the decision

20  of whether to try them together until the day of trial.

21  I'm sorry that will inconvenience someone, but perhaps

22  not as much as trying them together or separately,

23  whichever way it comes out.

24      And I did notice in some of the cases that

25  if the grounds for a severance are not apparent -- in

other words, if the -- it's impossible to tell if the
evidence would be admissible until you're in the trial.
Then a motion to sever is appropriate during trial, too.
Which would be even more inconvenient, I guess, but
still not barred.

Okay. Anything further on this case from
either the State or the defense?

MR. PUTMAN: No, Your Honor.

MR. RATEKIN: No, Your Honor.

MR. ELLIS: No, Your Honor.

THE COURT: All right. Thank you very
much. We're in recess on this matter.

(Proceedings adjourned.)

1                    REPORTER'S CERTIFICATE

2
THE STATE OF TEXAS )
3 COUNTY OF SMITH    )

4

5      I, Cassie Condrey, Official Court Reporter in and

6 for the 114th District Court of Smith County, State of

7 Texas, do hereby certify that the above and foregoing

8 contains a true and correct transcription of all

9 portions of evidence and other proceedings requested in

10 writing by counsel for the parties to be included in

11 this volume of the Reporter's Record, in the

12 above-styled and -numbered cause, all of which occurred

13 in open court or in chambers and were reported by me.

14      I further certify that this Reporter's Record of

15 the proceedings truly and correctly reflects the

16 exhibits, if any, admitted by the respective parties.

17      WITNESS MY OFFICIAL HAND this the 29th day of June,

18 2014.

19
                    _/s/Cassie Condrey_____
20                  CASSIE CONDREY,  TX CSR #9035
                    Certification Expires: 12-31-14
21                  Official Court Reporter
                    114th Judicial District Court
22                  Room 212
                    Smith County Courthouse
23                  Tyler, TX 75702
                    (903) 975-4331
24

25