## PIERCE'S EXHIBIT 1

Appellate Counsel, Mr. James Huggler's 7 page
Affidavit See Pierce's Exhibit 1(a) thru (g).

(page 1)                    PIERCE'S EXHIBIT 1

| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | 114th JUDICIAL DISTRICT |
| | § | |
| JOSEPH MICHAEL PIERCE | § | SMITH COUNTY, TEXAS |

## AFFIDAVIT

| STATE OF TEXAS | § |
| | § |
| COUNTY OF SMITH | § |

On March 16, 2017, James Huggler appeared before me, and after being placed under oath, confirmed the truth of the following statements:

My name is James Huggler. I am over the age of 18 and competent to make this oath.

I am a resident of Smith County, Texas and I have personal knowledge of the facts stated in this affidavit. I am licensed to practice law in the State of Texas, and have been so in good standing since 1996. I have been Board Certified in Criminal Law by the Texas Board of Legal Specialization since 2005. I was Board Certified in Criminal Appellate Law by the Texas Board of Legal Specialization in 2011. These certifications are current. I am also admitted to practice before the Supreme Court of the United States, The Court of Appeals for the Fifth Circuit and the Eastern and Southern Districts of Texas.

I have represented more than five hundred clients in appellate matters in state and federal court, I have appeared before the Texas Court of Criminal Appeals, the Supreme Court of Texas, and the Courts of Appeals for the First, Fifth, Sixth, Eleventh, Twelfth and Fourteenth Judicial Districts and the United

PIERCE'S EXHIBIT 1(a)

States Court of Appeals for the Fifth Circuit.

I was appointed to represent Joseph Michael Pierce in Smith County trial cause 114-0648-13 for purposes of a direct appeal. Mr. Pierce was represented through the trial of this case by Mr. Jason Ellis. In preparing this affidavit, I have reviewed: Mr. Pierce's writ and accompanying documentation; the State's Answer filed January 18, 2017; the reporter's record as well as the clerk's record; the Briefs filed in the direct appeal; the Court's opinion in 12-14-00073-CR; and my file for this case. I have also reviewed the trial court's order filed January 18, 2017 requesting an affidavit on my involvement with Mr. Pierce's case. Grounds 1, 2, 3 and 5 relate to actions by trial counsel, only Mr. Pierce's fourth ground raised in his 11.07 writ of habeas corpus was related to my appellate representation. I confine this affidavit to that issue.

### Ground 4, Restated

**Appellant counsel was ineffective under the 6th and 14th Amendments of the U.S. Constitution and under Texas' Constitution Art. I, 10, 19, for failing to raise the detention was illegal and filing a frivolous ineffective assistance claim that was not supported by the record.**

Mr. Pierce asserts that I was ineffective as appellate counsel because: (1) I failed to ensure a complete record was filed; (2) that I filed a frivolous ineffective assistance claim; (3) that I failed to bring up a biased juror issue; and (4) that I failed to claim the trial court abused its discretion in denying a motion to suppress. I will address each of these contentions in turn.

Page 2 of 7

PIERCE'S EXHIBIT 1(b)

## 1. A Complete Record

Mr. Pierce asserts that the pretrial hearing on January 21, 2104 was not filed with the Court of Appeals. The pretrial hearing on January 21, 2014 was transcribed by Ms. Beverly Dixon. During this hearing, the primary purpose was to determine a trial schedule because Mr. Ellis had been in an accident and was at that time in an arm cast and an ankle cast following surgery. The trial court also stated that it would not approve a plea agreement previously offered for a 20 year sentence. Mr. Pierce asked the trial court why his motion to suppress was denied. The trial court declined to answer. The reporter's record in this case was supplemented and filed with the court of appeals. I deny this allegation that I provided ineffective assistance of counsel.

## 2. A Frivolous Ineffective Assistance of Counsel Claim

In this case, it was appellate counsel's belief that a claim should be raised because without the findings of fact and conclusions of law, trial counsel Mr. Ellis was limited in understanding why the trial court denied the motion to suppress, thus limiting his ability to effectively cross-examine the State's witnesses. The court of appeals disagreed and declined to reverse on this issue. I disagree with Mr. Pierce's contention that raising this issue in the Brief filed was ineffective assistance of counsel.

## 3. Juror Bias Issue

Mr. Pierce complains that I provided ineffective assistance of counsel by not raising a potential juror bias issue and not discussing that issue with him.

PIERCE'S EXHIBIT 1(c)

Presumably this concerns Juror 37 who is listed in Ground 1 of the writ. Mr. Pierce claims in Exhibit H2 that I had responded that the issue regarding Juror 37 was not preserved. Writ Memo at p. 23 (Bates marked as page 240). I have reviewed Exhibit H2, the letter to Mr. Pierce from me dated August 25, 2014. I have also reviewed the other 19 letters sent by me or my office to Mr. Pierce through this case. While I do agree with his assertion that an issue regarding Juror 37's possible bias was not preserved, I have been unable to locate any letter to Mr. Pierce where I had previously stated that opinion.

Juror 37 raised her card or indicated that she would have an issue regarding Mr. Pierce's invocation of his right not to testify. VIII RR 161, 162. The juror stated that " If I - - just like he stated, if I'm innocent, I'm going to tell you. I may not help my case any; I may be so nervous that they say, "Well, yeah, she did it." But I'm going to tell you I'm innocent. And if I did it, I'm going to come up and say, "I did it." VIII RR 162. In response to the next question, she stated that she would be a little doubtful, at least a little regarding the right not to testify could not be held against a defendant. VIII RR 162. Her statement was later characterized by Mr. Ellis that [she] can't help but hold it against [the defendant] a little bit. VIII RR 163.

Juror 37 also stated that a crime where there was flight from an officer might make the crime more serious. VIII RR 189. These two exchanges appear to be the only times during voir dire that Juror 37 was identified as a panelist speaking.

The State moved to strike Juror 37 because she could not afford the defendant his Fifth Amendment Right not to testify. Mr. Ellis resisted that

PIERCE'S EXHIBIT 1(d)

motion because his notes did not indicate that the juror had stated that belief. VIII RR 199-200. Then before the juror could approach for individual voir dire, the State withdrew their challenge and no peremptory was used against her and juror 37 was seated as a juror.

Counsel has reviewed his notes from the case including the notes from meetings with Mr. Pierce at the Smith County Jail, and has determined that the issue regarding Juror 37 was not discussed. Appellate counsel is bound by the record for purposes of a direct appeal. In this case, while it may appear that Juror 37 exhibited a bias against Mr. Pierce based on his right not to testify, the record is completely silent as to any trial strategy or other factors to Mr. Ellis which would indicate that Juror 37 would be an acceptable juror. In this case, the State moved to challenge Juror 37 for cause, Mr. Ellis resisted, and then the State withdrew that challenge. There are any number of factors which could have been considered by trial counsel as to why she was left on the jury, none of which were present in the appellate record.

With this record, if Mr. Ellis had challenged for cause, had the State resisted, and had that challenge had been overruled by the trial court, that issue would have been preserved for appeal. On this record, the issue regarding Juror 37 and her belief regarding a Constitutional right of a defendant not to testify was not preserved for purposes of direct appeal. Counsel denies Mr. Pierce's assertion that there was ineffective assistance of appellate counsel.

**4. Failure to Claim the Trial Court Abused its Discretion in Denying the Motion to Suppress**

The objection which was raised at trial, and which was preserved for appellate review, was not the length of the stop, but rather whether the officer was authorized to make the traffic stop at all. The Motion to Suppress which was filed was a general motion for a warrantless arrest placing the burden on the Stae. II CR 2-4; V RR 8. A hearing was held on that motion on October 21, 2013. The focus of that motion, and what was preserved was whether the officer had the legal authority to initiate the traffic stop. The length of the detention was not raised by trial counsel and was not preserved for appellate review.

The first issue raised in the Brief was that the trial court erred in denying the motion to suppress. While counsel is aware of cases regarding the length of detention, including cases which followed this appeal, the issue of the length of the detention was not preserved for direct appellate review. On direct appeal, counsel is limited to issues which are supported by the record. I deny that I provided ineffective assistance of counsel by failing to raise an issue related to the length of the detention when that issue was not preserved.

## Conclusion

In this case, I thoroughly reviewed the record, communicated with my client, and filed a Brief presenting two issues to the Court of Appeals. The first issue in the Brief related to the denial of the motion to suppress, the second issue in the Brief related to a claim of ineffective assistance in not seeking findings of fact which would have assisted him in cross-examining the State's

Page 6 of 7

PIERCE'S EXHIBIT 1(f)

primary witness. I provided effective assistance of counsel to Mr. Pierce in this case. I deny the allegations made by Mr. Pierce in Ground Four of his post-conviction writ of habeas corpus.

I have submitted an original and three copies of this Affidavit to the Smith County District Clerk's Office.

"The statements contained herein are true, upon my oath."

James Huggler

Sworn to and subscribed before me on this the 16th day of March, 2017.

AMIE JANE GONZALEZ
Notary Public, State of Texas
My Commission Expires
July 19, 2018

NOTARY PUBLIC

Page 7 of 7

## PIERCE'S EXHIBIT 2

Trial Counsel, Mr. Jason Ellis' 7 page Affidavit,
See Pierce's Exhibit 1(a) thru (g).

CAUSE NO.  114-0648-13-A

| EX PARTE | § | IN THE 114th DISTRICT |
| | § | 2017 MAR 16 PM 4: 25 |
| | § | COURT    SMITH COUNTY TEXAS |
| | § | |
| JOSEPH MICHAEL PIERCE | § | OF SMITH COUNTY, TEXAS    BY _____ DEPUTY |

## Affidavit of Jason A. Ellis

Now comes Jason Ellis, in the above styled and numbered cause, to testify by affidavit concerning the allegations of ineffective assistance of counsel raised by Joseph Pierce. The allegations raised by Mr. Pierce will be addressed in the order they were raised under the grounds for the relief requested. My testimony is as follows:

I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement I may be held criminally responsible. This statement is true.

GROUND 1

In preparation for trial, I had many conversations with my client Joseph Pierce. Among those many conversations I explained the basics of jury selection. I do not recall having the conversation Mr. Pierce has testified to wherein we allegedly discussed before trial his strong preferences regarding prospective jurors. In fact I do not believe I have ever represented a client so familiar with the voir dire process to express to me strong opinions about what type of juror is best. I did involve Mr. Piece in our exercise of peremptory challenges. I remember well that we carefully considered and discussed the benefits of striking certain jurors over others. I recall Mr. Pierce being satisfied and in agreement with me regarding our exercise of peremptory challenges. I specifically remember that I let Mr. Pierce choose how to exercise our final

PIERCE'S EXHIBIT 2(a)

peremptory challenge after we narrowed it down to two jurors. I recall because he insisted that we strike one over the other even though I was leaning the other way.

Mr. Pierce alleges that I was ineffective in resisting the state's challenge to juror number 37. A review of the reporter's record shows that juror 37 expressed that she was "a little doubtful, at least a little" that she could afford the defendant his right to remain silent. I did in fact resist the state's challenge to this juror, and the record suggests that I did not personally note that the juror could not follow the court's instruction. I always take notes during jury selection. But I do not necessarily take a jury at his or her word.

In my experience as a trial attorney I have observed that some jurors are more easily persuaded than others. Others are too stubborn to ever raise their card in response to attorney questioning. As for the question at issue, I think that most people want to "hear both sides of the story." I asked the question of the jury in a way that made it easier for them to own up to what jurors often perceive as impermissible thinking. There's a reason why I don't ask, "Who here cannot follow the law, and will hold it against my client if he does not testify?" In my experience, people will not respond to this type of pointed questioning. Jurors often have to be coaxed into making a statement that may lead to a strike for cause.

In my view juror number 37 did not express a strong opinion. It is possible that I simply forgot to note her response. It is also possible that had I noted that response I would have moved for a cause strike against that juror. However, I find that unlikely because I resisted the state's challenge and I did not later use a peremptory strike to remove her from the jury. When I am picking a jury I am evaluating innumerable factors, including the jurors' behavior, body language, jury card/questionnaire responses, their reaction to other jurors' statements, and much more. If juror 37 had concerned me in any way on any issue I would not have resisted the state's challenge. For that matter, my assent to other proposed cause strikes by the state does

not necessarily indicate that I agreed with the state's reasoning. I took my own notes indicating which jurors I did want and those that I didn't. I was looking for a jury that would be open to the idea of not considering the state's evidence because it was obtained unlawfully.

The state's evidence against Mr. Pierce was considerable and not very complicated. We did not prevail in our pre-trial motion to suppress the evidence, and the court was unwilling to approve our proposed plea bargain. Accordingly, I was less concerned with jurors who wanted to "hear both sides of the story," and more concerned with finding jurors willing to turn a blind eye to evidence they believed was unlawfully seized. I must have wanted juror 37 for other reasons or I would not have resisted.

As for Mr. Pierce's account of his thoughts on juror 37 at the time of voir dire, I must disagree. I believe that Mr. Pierce was also taking notes. I doubt that he expressed to me at the time of voir dire his particular wish to remove juror number 37 seeing as we did not use a peremptory challenge to remove her from the jury. I can confirm Mr. Pierce's statement that it was my advice and counsel that he not testify during the trial. We thoroughly discussed that issue before trial and I believe he was in agreement with my assessment.

## GROUND 2

Mr. Pierce also alleges that I was ineffective in my examination of our witness Ms. Adams. Ms. Adams served one function. She came to testify that she alone was responsible for placing the methamphetamine in the car without Mr. Pierce's knowledge. Frankly, she was not a very strong witness. Her account and the way she delivered her testimony was not credible. According to law enforcement, the video evidence, and the book in photos, both Ms. Adams and Mr. Pierce appeared to be methamphetamine

addicts at the time of arrest. Still, it was my hope that her account would serve to create some doubt in the minds of the jury as to Mr. Pierce's guilt.

Mr. Pierce suggests that I could have better supported her testimony with the state's exhibits. I did not want Ms. Adams on the stand any longer than she needed to be. The more she testified the more she sounded like a girlfriend who had come to take the blame for her equally culpable boyfriend.

Mr. Pierce further complains that I should have made different closing argument to the jury regarding Ms. Adams' testimony. I gave lengthy argument focusing on what I thought were the strongest points in the trial. I largely focused on persuading the jury to ignore the state's evidence because of the nature of its seizure, and I did give argument related to Ms. Adams' testimony. In my experience with juries and argument in general, it is best to focus on a case's strongest arguments. I sincerely believed that there was room for the jury to decide that the evidence was unlawfully seized. That is the issue that I wanted to most concern the jurors as they retired for deliberation. It is my experience that focusing too much time and energy on lesser arguments undermines my credibility with the jury. I don't want the jurors to believe that I will passionately argue any point with equal zeal regardless of the evidence. I wanted the jury to be comfortable accepting that Mr. Pierce and Ms. Adams had likely decided together to transport methamphetamine, but that the evidence of their guilt was wrongly seized pursuant to an unlawful stop. Nevertheless I did also make argument regarding Ms. Adams testimony.

## GROUND 3

Mr. Pierce alleges that I was ineffective in failing to object to the State's closing arguments. To begin with, I rarely object to closing arguments. Little comes of it. Rarely would it ever lead to a mistrial, and often the judge simply tells the jury to remember for themselves the evidence that was presented. In my estimation the arguments offered by the prosecutors were reasonable, as were many of the inferences they made based on the evidence. It's argument—not evidence. Furthermore, since in my experience there is little to be gained from objecting to argument, I find that objecting only serves to remind the jury that the argument in question is one that bothers me. I prefer to keep my cool and remain unmoved by the prosecution's argument. I will object if, for example, the prosecution improperly shifts the burden to the defense.

Specifically Mr. Pierce complains of the prosecutors' descriptions of the drug packaging. The trooper made different statements regarding the packaging of the methamphetamine. I felt that it was the type of misunderstanding that sometimes results from misunderstood questioning. Still, I felt that it was understood by all, including the jury, that the drugs had been opened and repackaged by the lab. If the state wishes to make closing argument misunderstanding this point, then they may. Again, as I stated earlier in this affidavit, I was more focused on the unlawful seizure of the evidence.

## GROUND 4

The allegations of ineffective assistance in this ground do no concern my representation of Mr. Pierce.

Mr. Pierce finally alleges that I was ineffective in failing to object to the interrogation video offered by the state. I simply did not believe there was a valid legal objection I could make that would be sustained. I had reviewed the evidence before trial and did not feel that Mr. Pierce's statements were impermissibly or unlawfully obtained.

Mr. Pierce also suggests that portions of the audio are missing. I have provided to him all that I was provided by the state. This is not Mr. Pierce's first complaint regarding a video. In fact the trial had to be postponed to allow an expert to analyze the dashcam video of the arresting trooper. Mr. Pierce's family hired the expert. Mr. Pierce insisted that the state had substantially altered that video to his detriment. After a thorough analysis the expert could not support Mr. Pierce's allegations.

Mr. Pierce also suggests that he was first able to view the interrogation video at trial. That could be true. I know for a fact that he viewed the dashcam video with me more than once. We concentrated most of our efforts analyzing the stop and search of the vehicle as depicted on the dashcam video. I cannot recall if we viewed the interrogation video together or not. I do know that we discussed the content of the interrogation video —namely, that he made statements that implied his guilt in the offense. He understood this evidence. He knew that a jury would see that evidence. I always understood that he well remembered his time in that interrogation and knew that it would be difficult to overcome the statements he made to law enforcement. This is why we focused our time on the motion to suppress and subsequently on presenting those

suppression arguments to a jury.

I visited with Mr. Pierce in jail and in court multiple times. I also would frequently speak with his family by phone who would speak with him by phone. Although he knew of the interrogation video, I do not recall him ever requesting to see it or complaining that he had not seen it.

Respectfully submitted,

Jason A. Ellis
100 N. Broadway
Tyler, Texas 75702
Tel: (903) 590-1653

By: _____
Jason A. Ellis
State Bar No. 24052915

State of Texas
County of _____ SMITH _____
[name of county where statement is notarized.]

SWORN to and SUBSCRIBED before me, the undersigned authority, on the 10th day of March , 2017 year, by

Jason A. Ellis
[PRINT the first and last names of the person who is signing this affidavit.]

_____
Notary Public, State of Texas [Notary's signature.]

KARA BARRETT
Notary Public, State of Texas
My comm. expires 02-10-2019
Notary ID 12557992-5

[Notary's seal must be included.]

PIERCE'S EXHIBIT 2(g)

## PIERCE'S EXHIBIT 3

Pierce's Motion To Suppress Evidence filed on 08/27/2013 with a copy of the Trial Court's Order Denying Pierce's Motion To Suppress on 12/18/2013, See Pierce's Exhibits 3(a) thru (d).



**STATE OF TEXAS**

**vs.**

**JOSEPH PIERCE**

NO. 114-0648-13

IN THE DISTRICT COURT

14th JUDICIAL DISTRICT

SMITH COUNTY, TEXAS

<u>**MOTION TO SUPPRESS**</u>

**TO THE HONORABLE COURT:**

Now comes Joseph Pierce, Defendant, and files this Motion to Suppress and shows the following:

1.     Defendant has been charged with the offenses of Possession of a Controlled Substance.

2.     On or about February 22, 2013, law enforcement officers stopped Mr. Pierce's vehicle on I-20 and subsequently searched the vehicle without a search warrant. As a result of the search, evidence that may be used by the State at trial of this cause was seized, including illegal drugs, namely methamphetamine.

3.     The actions of the Tyler Police violated the constitutional and statutory rights of the Defendant under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

4.     Joseph Pierce was arrested without lawful warrant, probable cause or other lawful authority in violation of the rights of Joseph Pierce pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

5. Any statements obtained from Joseph Pierce were obtained in violation of Article 38.22 of the Texas Code of Criminal Procedure and in violation of the rights of Joseph Pierce pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

6. Any wire, oral, or electronic communications intercepted in connection with this case were seized without lawful warrant, probable cause or other lawful authority in violation of state and federal law.

7. Any tangible evidence seized in connection with this case, including but not limited to cocaine and marijuana, was seized without warrant, probable cause or other lawful authority in violation of the rights of Joseph Pierce pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas.

8. Therefore, Defendant requests that the following matters be suppressed at trial of this cause:

a. Any and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Joseph Pierce in this case or in connection with the investigation of this case, including but not limited to illegal drugs, and any testimony by the Tyler Police or any other law enforcement officers or others concerning such evidence.

b. The arrest of Joseph Pierce at the time and place in question and any and all evidence which relates to the arrest, and any testimony by the Tyler Police or any other law enforcement officers or others concerning any action of Joseph Pierce while in detention or under arrest in connection with this case.

PIERCE's EXHIBIT 3(b)

c.  All written and oral statements made by Joseph Pierce to any law enforcement officers or others in connection with this case, and any testimony by the Tyler Police or any other law enforcement officers or others concerning any such statements.

d.  All wire, oral, or electronic communications intercepted in connection with this case and any and all evidence derived from said communications.

e.  Any other matters that the Court finds should be suppressed upon hearing of this motion.

**WHEREFORE, PREMISES CONSIDERED**, Defendant prays that the Court suppress matters at trial of this cause, and for such other further relief in connection therewith that is proper.

Respectfully submitted,

Jason A. Ellis
Texas Bar No. 24052915
120 S. Broadway Ave. St. 109
Tyler, TX 75702
Telephone:  (903) 705-6236
Facsimile:  (903) 705-6237

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was served on counsel for the State.  Further, a copy of this Motion was also served on Appellant by ~~certified and first class mail.~~ Hand Delivery

Jason A. Ellis

PIERCE'S EXHIBIT 3(c)

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| VS. | § | 114TH JUDICIAL DISTRICT COURT |
| | § | |
| | § | |
| JOSEPH PIERCE | § | SMITH COUNTY, TEXAS |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

On this day, came on to be considered Defendant's Motion to Suppress. After considering the motion, the evidence, the file, the arguments of counsel and the applicable law, the Court is of the opinion that the motion should be **DENIED**.

IT IS THEREFORE ORDERED that Defendant Joseph Pierce's Motion to Suppress is **DENIED**.

SIGNED Dec. 17, 2013

HONORABLE CHRISTI KENNEDY
114TH JUDICIAL DISTRICT COURT

Copy to
State
Jason Ellis
902 705-6227

FILED
DEC 18 2013
LOIS ROGERS
CLERK 114th JUD. DIST COURT, SMITH CO., TX
BY_____ DEPUTY

PIERCE'S EXHIBIT 3(d)

## PIERCE'S EXHIBIT 4

Volume 6 of the Reporter's Record (RR) pages 56; 62-65,
See Pierce's Exhibit 4(a) thru (e).

PIERCE'S EXHIBIT 4

1  The detention was for a reasonable amount of time. The

2  trooper had plenty of suspicion to detain, waited for

3  the dog that was close and did not take an inordinate

4  amount of time to get there. It was a reasonable amount

5  of time. And when the dog alerted, they did a prompt

6  search and discovered what they believed to be

7  methamphetamine in the vehicle.

8           THE COURT: Mr. Ellis, on behalf of the

9  defense?

10          MR. ELLIS: Yes, Your Honor.

11          Your Honor, we think there are essentially

12  three reasons the Court should grant the motion to

13  suppress.

14          First, because the stop was unlawful.

15  Secondly -- and secondly, that the State has not proven

16  that the stop was a lawful stop. And finally that the

17  detention was too long.

18          Your Honor, on the stop -- you have a lot

19  of testimony on it. Essentially, the officer says there

20  were two incidents where he was driving on the improved

21  shoulder.

22          In fact, he goes as far to say that driving

23  on the white line is driving on the improved shoulder.

24  I think the case law I will present will contradict

25  that, Your Honor.

1        So regardless of whether or not you think

2  it was the first incident or the second, which I would

3  submit he wasn't driving on the shoulder, the State

4  hasn't met the burden of proving that that was an

5  offense and so the stop should be suppressed.

6        Your Honor, when we look at the detention

7  -- this is really the final point.  The length of

8  detention for Mr. Pierce -- unfortunately there's no

9  bright line standard for the Court about how long

10  someone can be detained for a drug dog to come out and

11  search.

12        Rather, the Court has to look at -- the

13  Court has to look at the -- all the factors that went in

14  to it and whether or not the officer did all he could.

15  And I think what you'll find is that very quickly -- and

16  I have case law on this.  Very quickly in to the stop,

17  he determines he's going to need a drug dog.

18        In fact, he's in the vehicle and he says,

19  "You're within your right to refuse.  I'm within my

20  right to call the dog."  And, Your Honor, I would submit

21  at that point it's no longer relevant -- the points that

22  the State brings up that would amount to reasonable

23  suspicion.  Specifically, those would be finding the

24  remotes and the wires.  Those were found after that

25  point.  He's already detained Mr. Pierce.  He didn't

1  need those.  He's already detained him on the side of
2  the road.

3          The conflicting stories, which I would also
4  submit, had to do with the different way the question
5  was asked.  But in either case, those were developed or
6  discovered after he had decided to detain Mr. Pierce and
7  call a drug dog.

8          The real issues, Your Honor, the real
9  issues that would amount to the officer's reasonable
10 suspicion were nervousness, Mr. Pierce's head gesture in
11 the vehicle, and the sores on his body.  And,
12 Your Honor, that's the only -- that it's.

13          I believe those are the only facts -- other
14 than him driving from Dallas.  I would hope the Court
15 wouldn't conclude that anyone driving from Dallas,
16 eastbound on I 20, has at least one factor for
17 reasonable suspension of drug trafficking.

18          THE COURT:  Well, and let me ask you this.
19 As far as -- are you talking about the length of
20 detention?

21          MR. ELLIS:  Yes, Your Honor.

22          THE COURT:  All right.  Where do you think
23 the suspended license plays in that?

24          MR. ELLIS:  Your Honor, I think he has --
25 the officer has to take a reasonable amount of time to

1   resolve that issue and he ran the license right away.

2   But I think it's clear that he tells Mr. Pierce in the

3   car, "Well, at this point it's becoming a drug dog

4   search." And he's now moved on to a new investigation.

5               And I don't know if the Court's asking me

6   if I believe that that is -- I think that he didn't need

7   anymore time to resolve that issue. He testified, in

8   fact, that he came to believe the license was suspended

9   and he believed Mr. Pierce.

10              Frankly, if he wanted, he could have

11   arrested Mr. Pierce for that and he chose not to. So I

12   don't suspect anything malicious on the part of the

13   trooper, but I do think he's relying a lot on memory a

14   long time later.

15              Your Honor, with respect to the specific

16   articulable facts that the trooper referenced, I would

17   say that nervousness is normal. And I've got case law

18   that supports that. That his head dropping down after

19   being repeatedly asked similar questions -- "Do you have

20   anything illegal?" "No." "Do you have this drug?"

21   "No." "Do you have this drug?" "No." "Do you have

22   meth?" "No."

23              I think there was a conversation there and

24   it's unfortunate that the trooper, by his own testimony,

25   forgot to record that for us. And I would have liked to

PIERCE'S EHIBIT 4(d)

```
 1  have had the Court be able to review that since the
 2  trooper relied on it so heavily and decided to detain
 3  him on the side of the road.
 4          Ultimately, Your Honor, we ask that the
 5  Court grant the suppression because the stop was
 6  unlawful and because the detention was too long.  It was
 7  42 minutes.  He wasted 9 of those not even bothering to
 8  call for a drug dog.  We think a suppression's granted,
 9  Your Honor.
10          THE COURT:  Warranted.
11          MR. ELLIS:  Yes, Your Honor.
12          THE COURT:  All right.
13          Mr. Putman, on behalf of the State?
14          MR. PUTMAN:  Just briefly, Your Honor.
15          I think Mr. Ellis would be right that I
16  would have to prove that the defendant was not driving
17  on the shoulder for one of those seven reasons if I was
18  trying to convict him of driving on the shoulder.
19          But my burden is to show that the officer
20  had reasonable suspicion to pull the defendant over.
21  When he saw him driving on the shoulder, halfway on the
22  shoulder, he had a reasonable suspicion to pull him
23  over.
24          I'm not required to prove beyond a
25  reasonable doubt a violation of the law.  I'm required
```

## PIERCE'S EXHIBIT 5

Volume 9 of the Reporter's Record (RR) pages 58-59; 209-210; 297.

1  the reason why I stopped them and then I'll ask for

2  their driver's license and insurance.

3      Q.  How many people were in the vehicle that you

4  stopped?

5      A.  There were two people in the vehicle.

6      Q.  And where were they sitting?

7      A.  The driver was obviously in the driver's seat

8  and there was a female that was in the passenger seat.

9      Q.  Did you see the driver of that vehicle that you

10 pulled over that night in the courtroom today?

11     A.  Yes, sir.

12     Q.  Could you --

13             MR. ELLIS:  Objection, Your Honor.  May we

14 approach?

15             THE COURT:  You may.

16             (At the bench, on the record.)

17             MR. ELLIS:  At this point, Your Honor, I'm

18 going to make the same objection.

19             THE COURT:  Which is?

20             MR. ELLIS:  I object to any evidence,

21 Your Honor, obtained as a result of this traffic stop

22 under the United States and Texas Constitutions and the

23 provisions I named earlier and mentioned in our motion

24 to suppress from pretrial.  I ask for a running

25 objection on this witness, Your Honor.

1           THE COURT: Okay. The Court overrules that

2 objection and grants you a running objection.

3           MR. ELLIS: Thank you, Your Honor.

4           (End of bench conference.)

5    Q.  (BY MR. PUTMAN) Trooper Frazier, do you see

6 the driver of that vehicle in the courtroom today?

7    A.  Yes, sir.

8    Q.  Could you point to him and tell me what color

9 shirt he's wearing?

10    A.  He's wearing a black or blue jacket.

11           MR. PUTMAN: I ask the record to reflect

12 the witness has identified the defendant.

13           THE COURT: The record shall so reflect.

14    Q.  (BY MR. PUTMAN) So you go up to the

15 passenger's side to tell them why -- who you are, why

16 you're there. What did you notice when you got up

17 there?

18    A.  I noticed several things. Obviously, there was

19 a male and a female. They seemed to be -- as soon as I

20 started talking to them, they seemed to be really

21 nervous. The driver explained to me that he thought

22 that his driver's license was suspended so I was kind of

23 asking him some questions about that. And then I asked

24 for the insurance.

25    Q.  Okay. You testified that most people you pull

 1  of determine for you kind of where you're going to go

 2  looking for the source and how you get that information?

 3      A.  Yes, sir.  Somewhat.  I mean, it's one level to

 4  one level.  But in this case, with the 1 pound, we were

 5  very interested in where it was coming from.

 6      Q.  Were you woken up February 22nd, 2013?

 7      A.  Yes, sir.

 8      Q.  And when you got the call from Trooper Frazier,

 9  what did you do?

10      A.  I went straight to the DPS office and met with

11  him there.

12      Q.  And do you work out of that DPS office?

13      A.  In Tyler.  Yes, sir.

14      Q.  And when you got there, what did you do?

15      A.  Basically went over what was there as far as

16  electronics.  Data could be received.  As I said, talked

17  to them to see what they had done already.

18              MR. ELLIS:  Objection, Your Honor.  May we

19  approach?

20              THE COURT:  You may.

21              (At the bench, on the record.)

22              MR. ELLIS:  At this point, I'm going to

23  object as I did in my pretrial motion as to any physical

24  evidence or testimony this witness would offer --

25              THE COURT:  Okay.  You're going to have to

```
 1   be a little more specific.  What are you objecting?
 2                MR. ELLIS:  I'm sorry.  Well, as urged in
 3   my pretrial motion.
 4                THE COURT:  Are you referring to your
 5   motion to suppress?
 6                MR. ELLIS:  Yes, Your Honor.
 7                THE COURT:  Okay.
 8                MR. ELLIS:  I'm glad you clarified that.
 9   At this point I think the trooper is going to testify to
10   comments made by my client and physical evidence seized
11   by the officers.  I just want to re-urge that objection.
12                THE COURT:  Based on what you're contending
13   is the illegal search?
14                MR. ELLIS:  Yes, Your Honor.
15                And I would like to running objection on
16   that.
17                THE COURT:  I think you already have one,
18   but it's -- it's overruled.
19                MR. ELLIS:  Thank you, Your Honor.
20                (End of bench conference.)
21        Q.  (BY MR. PUTMAN)  So they come to the DPS office
22   and you talked to the trooper first?
23        A.  Yes, sir.
24        Q.  Get information about what's occurred prior to
25   you getting there?
```

1  they have to -- they cannot consider all the evidence
2  seized as a result of that offense.
3          THE COURT:  Okay.  And I guess really what
4  I was asking, at the suppression hearing before trial,
5  you had other issues relating to the whole detention.
6  So I had assumed you would be asking about the stop and
7  legality of the stop --
8          MR. ELLIS:  Yes.
9          THE COURT:  -- for driving on the improved
10 shoulder.
11          MR. ELLIS:  Yes.
12          THE COURT:  But I really didn't know if you
13 were going to be asking for anything else.
14          MR. ELLIS:  Oh, all right, Your Honor.  As
15 far as the length of detention, for example.
16          THE COURT:  I think that was one issue.
17          MR. ELLIS:  It was, Your Honor.  At this
18 time, Your Honor, I'm not asking for that instruction in
19 the jury charge.
20          THE COURT:  Okay.  I'm not trying to put
21 words in your mouth.  I just -- when I work on it, I
22 want to make sure I get it, you know?  And so I'll have
23 something.  If you want -- if you have specific language
24 you think you want in the charge, make sure you have it
25 ready for tomorrow.  I'll be planning to charge and

PIERCE'S EXHIBIT 5(e)

## PIERCE'S EXHIBIT 6

Pierce's Pretrial Hearing held on 01/21/2014, See Pierce's Exhibit 6(a) thru (i).

APPEALS COURT NO. 12-14-00073-CR

CAUSE NO. 114-0648-13

STATE OF TEXAS                    * 114TH DISTRICT COURT OF

VS.                              *

JOSEPH MICHAEL PIERCE            * OF SMITH COUNTY, T E X A S

PRETRIAL HEARING

On the 21st day of January, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause, before the HONORABLE CHRISTI KENNEDY, JUDGE Presiding, held in Tyler, Smith County, Texas.

Proceedings reported by computerized stenotype machine; Reporter's Record produced by computer-assisted transcription.

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(a)·  APP, G-1

```
1                        A P P E A R A N C E S

2

3   HON. MATT BINGHAM

4   District Attorney for

5   Smith County, Texas

6   BY:

7   HON. JACOB D. PUTMAN

8   SBOT NO. 24065929

9   Assistant District Attorney

10  Smith County Courthouse, 4th Floor

11  Tyler, Texas  75702

12  Telephone: (903) 590-1718

13

14                       APPEARING FOR THE STATE OF TEXAS;

15

16  HON. JASON ELLIS

17  Attorney at Law

18  SBOT NO. 24052905

19  120 S. Broadway, Suite 109

20  Tyler, Texas  75702

21  Telephone: (903) 705-6236

22

23                       APPEARING FOR THE DEFENDANT.

24

25
```

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(b)

APP. 6-2

1                          I N D E X

2

3

4    OPEN COURT, DEFENDANT PRESENT ........... Page 4

5              HEARING ADJOURNMENT ........... Page 8

6              Reporter's Certification ...... Page 9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(c)

APP. 63

P R O C E E D I N G S

(OPEN COURT, DEFENDANT PRESENT.)

THE COURT: This is Cause No. 114-0648-13, State of Texas versus Joseph Pierce. Counsel for the State, counsel for the defendant and the defendant are present. All right. I think when Mr. Ellis and Mr. Putman were on the phone and we were talking about this case, Mr. Ellis thought there might be an agreed resolution of the case. What is that resolution, Mr. Ellis?

MR. ELLIS: An agreement for 20 years incarceration, Your Honor.

THE COURT: And I think I indicated to you I didn't know what the agreement was at that time, but that's not a recommendation the Court's going to follow. And so, I imagine you all will be having a trial?

MR. ELLIS: I don't know if we'll have a trial or not. Would the Court follow any recommendation or that recommendation?

THE COURT: I'm not following that recommendation. I don't have any recommendation before me besides that one, but I'm not following that recommendation. So this is a 10 to 99 or life case.

MR. PUTMAN: Yes, it is, Your Honor.

THE COURT: And anyway, so I'm not following that recommendation which is the only recommendation that's

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(d)    APP. 69

Page 130

5

1   been presented.  And so I understand you're saying, Mr.

2   Ellis, that we obviously have some physical limitations

3   right now and you don't think that you can go to trial on

4   the current scheduled date which is now the 27th, which is

5   next Monday.

6                   MR. ELLIS:  Right.

7                   THE COURT:  And for the record, you

8   mentioned that you had some physical limitations.  For the

9   record you have a cast on your left arm, your left leg is

10  in some kind of boot or something.

11                  MR. ELLIS:  Very special boot that allows me

12  to walk.  I broke my ankle and had surgery on my ankle.

13                  THE COURT:  Okay.  And you're using some

14  other sort of scooter type thing that you put your left leg

15  in to get around?

16                  MR. ELLIS:  Yes, Your Honor.

17                  THE COURT:  Okay. And the Court would think

18  that it'd be very difficult for you to go to trial for a

19  two or three or four day case, including jury selection

20  where you'd be standing up for an hour or more in this

21  current condition.  So would you be urging a request for a

22  continuation in this case?

23                  MR. ELLIS:  Yes, Your Honor.  I've filed a

24  written Motion for Continuation in this case, Your Honor.

25                  THE COURT:  I understand.

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(e)    APP. 69

**6**

1  MR. ELLIS: So I would urge for a trial date
2  setting for January 27th.
3  THE COURT: All right. That's really - this
4  is Tuesday, January 21st. That would be six days from now.
5  Is there any opposition from the State to the Court on its
6  own motion, continue with this case until Mr. Ellis would
7  be more able to try this case?
8  MR. PUTMAN: There are none.
9  THE COURT: Mr. Ellis, has anyone told you
10  how long they think you're going to be- --
11  MR. ELLIS: Not yet. I have a doctor's
12  appointment in two weeks from Wednesday, which is tomorrow,
13  where I'm supposed to be able to remove the cast.
14  THE COURT: The arm cast?
15  MR. ELLIS: And I'll allowed to walk in the
16  boot. I don't know at that point how much longer I'll be.
17  I may or may not be able to stand up long really for voir
18  dire. I'm anxious to get the case handled. I don't want
19  to be distracted.
20  THE COURT: Sure.
21  MR. ELLIS: And for what it's worth, my
22  fingers were fully cast until a week ago and when I got
23  them back, they weren't handling real well, so even
24  handling clerical tasks were a little bit slow. So I won't
25  promise the Court that two weeks from Wednesday --

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(f)    App. 6-6

7

```
1              THE COURT:  Your appointment is tomorrow?
2              MR. ELLIS:  Yes.
3              THE COURT:  If we set it say four weeks out
4    and with the understanding that if you're not a hundred
5    percent, we won't go forward until you are.
6              MR. ELLIS:  I understand.  I would think
7    that would be a fine date at least until I can check in,
8    Your Honor.
9              THE COURT:  Okay.  That's really what I'm
10   looking for, when you can check back in.
11             Mr. Pierce, you keep raising your hand.  What's
12   that about?
13             THE DEFENDANT: Yes, ma'am.  May I speak?
14             THE COURT:  If you want to talk to your
15   lawyer first, he might prefer you talk to him first.
16             THE DEFENDANT:  I want to talk to you.
17             THE COURT:  Okay.
18             THE DEFENDANT:  Is there any way I can be
19   told why - I don't know what the proper words are - why my
20   Motion was denied?
21             THE COURT:  What motion?
22             THE DEFENDANT:  The Motion to Suppress?
23             THE COURT:  I'm not going to answer your
24   question.  I really don't discuss the reasons for Court
25   rulings.
```

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(g)   APP. G-7

8

1            THE DEFENDANT: Okay.

2            THE COURT: That's the sort of instructions

3 they give you at Judge school is just make a ruling.

4            THE DEFENDANT: Yes, ma'am.

5            THE COURT: But anyway, because I thought it

6 was the correct ruling is the answer.

7         All right. Let's try for February 24th if

8 everybody's comfortable on that date. Then we'll plan to

9 go forward, if not, you'll have an update for us.

10            MR. ELLIS: Thank you, Judge.

11            THE COURT: Okay. All right. Thank you all

12 very much. We're in recess in this matter.

13            (HEARING ADJOURNMENT.)

14

15

16

17

18

19

20

21

22

23

24

25

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(h)   APP. G8

1   STATE OF TEXAS

2   COUNTY OF SMITH

3      I, Beverly E. Dixon, Deputy Official Court Reporter in

4   and for the 114th District Court, Smith County, Texas, do

5   hereby certify that the foregoing contains a true and

6   correct transcription of all portions of evidence and other

7   proceedings requested in writing to be included in the

8   Reporter's Record, in the above styled and numbered cause,

9   all of which occurred in open court or in chambers and were

10   reported by me.

11      I further certify that this Reporter's Record of the

12   proceedings truly and accurately reflects the exhibits, if

13   any, offered by the respective parties.

14      I further certify that the total cost for the

15   preparation of this Reporter's Record is $  and will be

16   paid by

17      WITNESS MY HAND this 16th day of September, 2014.

18

19              /s/ Beverly E. Dixon

20             _____

21             BEVERLY E. DIXON, CSR NO. 1627
                Expiration Date: 12/31/14

22             Deputy Official Court Reporter
             114th District Court

23             of Smith County, Texas  -2nd floor
             Smith County Courthouse

24             100 N. Broadway
             Tyler, Texas  75702

25             (903) 590-1620

beverly e. dixon, c.s.r.
deputy official court reporter
114th District Court

PIERCE'S EXHIBIT 6(i)   APP. 6-9

## PIERCE'S EXHIBIT 7

Tyler, Texas DPS Drug Analysis Report, Marked as State's Exhibit 4, Attached as Pierce's Exhibit 7, to show the drugs were actually submitted in a "Heat Sealed" bag, not in a Ziploc bag as the State alleged!

PIERCE'S EXHIBIT 7



# TEXAS DEPARTMENT OF PUBLIC SAFETY

CRIME LABORATORY
PO Box 132255
Tyler, TX 75713
Voice 903-939-6021 Fax 903-939-6097
TylerCrimeLab@dps.texas.gov



STEVEN C. MCCRAW
DIRECTOR
DAVID G. BAKER
CHERYL MacBRIDE
DEPUTY DIRECTORS



COMMISSION
A. CYNTHIA LEÓN CHAIR
CARIN MARCY BARTH
ADA BROWN
ALLAN B. POLUNSKY
RANDY WATSON

## Controlled Substance Analysis Laboratory Report

Issue Date:    April 23, 2013

Jeremy Frazier
Texas Highway Patrol
PO Box 130040
Tyler, TX 75713

Laboratory # TYL-1302-01091
Agency # TX131H0FRX001
County: Smith
Offense Date: 02/22/2013

Suspect(s):   PIERCE, Joseph Michael (DOB 08/09/78)
ADAMS, Marlina Lee (DOB 09/07/81)

Requested Analysis: Examine for the presence of Controlled Substances

Submission Information:

01: 5x7x8 Brown box on February 22, 2013 by Frazier, Jeremy VIA In Person

Evidence Description, Results of Analysis and Interpretation:

01: 5x7x8 Brown box

01-01-AA: heat sealed bag containing loose crystal substance and another baggie of crystal
substance  (Ex1)
Contains Methamphetamine
536.18 grams net weight
2 of 2 items were sampled for analysis

This report has been electronically prepared and approved by:

Claybion Cloud  III
Forensic Scientist IV
Texas DPS Tyler Crime Laboratory

ACCREDITED BY THE AMERICAN SOCIETY OF CRIME LABORATORY DIRECTORS - LAB ACCREDITATION BOARD

TxDPS 04 08.13

COURTESY · SERVICE · PROTECTION

PIERCE'S EXHIBIT 7.



## PIERCE'S EXHIBIT 8

Video/Audio Expert Declaration of Herbert Joe w/transcribed audio/video of State's Video Exhibit 2 "Trooper Frazier's Dashcam video, that states the video shows Trooper Baker while holding a white plastic grocery bag, imform Trooper Frazier that the drugs were found in that bag. With supporting screenshot photo. See Pierce's Exhibit 8(a) thru (f).

## DECLARATION OF HERBERT JOE

"I, Herbert Joe, declare that: I am over the age of eighteen, of sound mind, have never been convicted of a felony or crime of moral turpitude, and am competent to make this Declaration. All facts recited in this Declaration are according to my own personal knowledge, information and belief and are true and correct.

"Yonovitz & Joe, L.L.P., a registered partnership based in Dallas, Texas, is a team of forensic audio/video analysts, experts and consultants with over sixty-two combined years. Our diverse legal, forensic, academic, research and clinical experience includes scientifically objective, verifiable and generally-accepted forensic analyses of audio and video evidence, including, but not limited to, forensic authenticity analyses of audio and video evidence, voice/speaker identification or elimination via aural-acoustic-spectrography, acoustic/sound/noise analyses, digital enhancement of audio or video recordings, transcription development and verification, etc. We have been retained in thousands of cases involving thousands of recordings throughout the U.S., Canada, Mexico, the United Kingdom, India, Sri Lanka, Australia, Singapore and the United Arab Emirates, and have testified in state and Federal courts in civil, criminal and administrative matters throughout and beyond the United States.

"Representative clients include Steptoe & Johnson (Wash., D.C.), Shearman & Sterling (NYC), Simpson Thacher & Bartlett (NYC), Mesereau & Yu (Los Angeles), Armstrong Teasdale (Kansas City), Ford & Harrison (Memphis), Rawle & Henderson (Philadelphia), McAfee & Taft (OKC), Bracewell & Patterson (Houston), Akin Gump (San Antonio), Jones Day (Dallas), Haynes & Boone (Houston), Thompson & Knight (Dallas), Vinson & Elkins (Dallas), Jenkens & Gilchrist (Dallas), Wal-Mart Stores, Inc., Georgia-Pacific, LLC, Costamare Shipping Comp., Motorola Corp., Vivint, Inc., BankOne, BlueCross BlueShield, Shell Oil Co., United Parcel Service, Inc., Shell Texaco & Saudi Refineries, Inc., Reliant Energy, 7-Eleven, Inc., Evercom Systems, Inc., Abu Dhabi (United Arab Emirates) Judicial Department, U.S. Attorney's Office (NM), Mississippi Attorney General's Office, Combined Law Enforcement Agencies of Texas (CLEAT), Organization of Spanish Speaking Officers (OSSO), Harris County (Houston) Attorney's Office, Harris County Sheriff's Office, City of Austin, City of Sasche (TX), City of San Angelo, City of Galveston, Plano (TX), Carrollton (TX), Mesquite (TX), Phoenix and Akron (OH) Police Depts., Dallas, Maricopa (Phoenix), Tulsa (OK), Harris (Houston), Fulton (GA) and Summit (OH) County DA's Offices, Washington D.C., Houston, Little Rock, South Dakota, DuPage County (IL), Green County (PA), New Mexico, New Hampshire and New Jersey Public Defender's Offices, Kentucky Department of Public Advocacy, Louisiana Capital Assistance Center, Oklahoma Indigent Defense System, the Associated Press (AP), ABC, BBC, FOX-TV, etc. High profile cases include the *Branch Davidian* case and *State of Florida vs. George Zimmerman*; consultations include Dr. Phil, TMZ, *CSI:Miami* and *People* Magazine.

"I have given numerous regional, national and international presentations since the 90s. Recent speaking engagements include the April 2014 Forensics/Technology Seminar (CLE approved; Austin, TX), the May 2014 22nd Executive Summit of the American College of Forensic Examiners, Tucson, AZ, the Oct. 09-10, 2014 12th Annual Forensics Seminar (CLE approved) and the Nov. 22, 2014 annual convention of the

American Speech & Hearing Assoc. 2015: I was one of two Guest Panelists at the International Information Systems Security Certification Consortium ((ISC)²) webinar, March 26, 2015; I gave 3 presentations at the 2015 Annual Convention, Forensic Expert Witness Association (FEWA; CLE approved), San Diego, April 24, 2015; I was invited to be a Guest Speaker at the 2015 Techno Security & Forensics Investigations Conference/Mobile Forensics World, Myrtle Beach, SC, June 02, 2015. I gave presentations at the 2015 International Conference & Training Expo., High Technology Crime Investigation Association (HTCIA), Aug. 31, 2015, Orlando, FL, and the 13th Annual Forensics Seminar (CLE approved), October 02, 2015, Dallas, TX. 2016: CLE-approved, Four-Corner Forensics Seminar, May 06 in Durango, CO; Enfuse 2016 [annual, international 3-day security and digital investigations conference at Caesar's Palace in Las Vegas May 22-25]; 2016 Techno Security & Forensics Investigations Conference/Mobile Forensics World, June 5 - 8, 2016, Myrtle Beach; 20166 International Conference & Training Expo., High Technology Crime Investigation Association (HTCIA), Aug. 29-30, 2015, Las Vegas; 62nd Annual American Society for Industrial Security (ASIS) Int'l Seminar and 2016 (ISC)² Security Congress, Sept. 12-13, 2016, Orlando, and the 14th Annual Forensics Seminar, Oct. 21, 2016, Houston, CLE-approved.

"I am a forensic scientist with 5 degrees, including 3 science degrees (B.S., M.A., M.S.) and two law degrees (J.D., LL.M.), and am also Adjunct Graduate Faculty at the University of Phoenix and a Registered Patent Attorney. I am also a Board Certified Forensic Audio/Video Examiner; Certified Forensic Consultant; Diplomat, American Board of Forensic Examiners; Diplomat, American Board of Law Enforcement Experts; Licensed Instructor, Texas Board of Private Investigators, Former Board Member, Forensic Expert Witness Association; Board of Legal Advisors, American Guild of Court Videographers; Charter Member, Legal Advisory Board, American College of Forensic Examiner Institute; Member, The Commission on Forensic Education; Fellow, American Guild of Court Videographers; and Fellow, American College of Forensic Examiners. I am also a Member of the Evidence Code Committee and of the Law-Related Education Committee of the Oklahoma Bar Association, a Certified Ethical Hacker, Computer Hacking Forensic Investigator v8, Cellebrite Certified Logical Operator, Cellebrite Certified Physical Analyst, Certified Mediator, licensed to practice law in Texas and Oklahoma, and a Member of the College of the State Bar of Texas. I have testified in state and Federal courts in civil and criminal cases within the U.S. and overseas. Clients of Y&J include all levels of local, state and Federal governmental entities, law firms throughout the world, Fortune 100 companies, Public Defender's Office throughout the U.S., etc. I have co-authored peer-reviewed publications, and consulted for *CSI:Miami*, Dr. Phil, ABC, BBC, FOX, AP, TMZ, the Wall Street Journal and *People Magazine*.

"Mr. Joseph Michael Pierce (DOB 08/09/1978) has retained me to review the video recording of his 02/22/13 traffic stop. The video reviewed was a reliable copy of the original. Specifically, the Watch Guard Disc ID is "512d269900019643." The Watch Guard DV-1 OS is "v6.1.1 build 2729 DVD Authoring Version = 2." The following are selected events as seen or heard and their corresponding times according to the copy reviewed. The "WG Time" is the timestamp of the event when played back via the Watch Guard Video Player. The "Run Time" is the runtime from the beginning of the recording, as seen on the counter of the same Watch Guard Video Player. All times are approximate.

PIERCE'S EXHI IT 8(b)    App. F2

| WG Time | Event | Run Time |
|---------|-------|----------|
| ======= | ================ | ======= |
| 00:14:57 | Video starts at time/date stamps: | 00:00:00 |
| 00:17:57 | Joseph's car passes in front of trooper (See PhotoExhibit 1) | 00:03:00 |
| 00:18:05 | Trooper pulls out | 00:03:08 |
| 00:18:14 | Trooper's lane merges onto Interstate; (See PhotoExhibit 2); trooper enters traffic, accelerates in passing lane, then stays in passing lane just behind Joseph, then… | 00:03:17 |
| 00:19:34 | Trooper's car gets right behind Joseph's car, and the Trooper turns his vehicle's emergency lights on | 00:04:36 |
| 00:20:18 | Trooper first goes to passenger side of Joseph's car | 00:05:20 |
| 00:20:23 | Trooper: "Good evening, sir. Highway Patrol. Reason for the stop, when I got there behind you, I noticed you hit that white line a few times. I don't know if you were just watching me behind you, I just want to make sure you're safe to drive, though. You've nothing to drink or anything like that? Okay, you got your license and insurance, and it'll be a warning and I'll get you back on the road." | 00:05:25 |
| 00:23:23 | Joseph gets out of his car. | 00:08:25 |
| 00:24:21 | Joseph gets in to the trooper's car. | 00:09:23 |

00:24:48

| | | | 00:09:50 |
|---|---|---|---|
| | Trooper: | Uh, what's it suspended for? | |
| | Joseph: | Not paying traffic tickets. | |
| | Trooper: | Not paying what tickets? | |
| | Joseph: | Traffic tickets. | |
| | Trooper: | Traffic tickets? | |
| | Joseph: | And to tell you the truth, it's been so long, it's probably not suspended anymore. | |
| | Trooper: | Okay. | |
| | Joseph: | I hope it ain't. | |

| 00:25:45 | Trooper: | Where ya'll off to tonight? | 00:10:47 |
|---|---|---|---|
| | Joseph: | Home. | |

| | | | |
|---|---|---|---|
| | Trooper: | There in Louisiana, Greenwell Springs, is that what it is? | |
| | Joseph: | (Yes, sir.) | |
| | Trooper: | Where ya'll coming from? | |
| | Joseph: | (My) --- cousins. | |
| | Trooper: | Where's that at? | |
| | Joseph: | Right there in uh ---. | |
| | Trooper: | Oh. | |
| 00:28:16 | Trooper: | You don't have anything illegal in the vehicle now, do you? No guns, large sums of cash you can't account for? Marijuana? | 00:13:18 |
| | Joseph: | I ain't got no, I ain't got forty dollars. | |
| | Trooper: | Well, I don't know until I talk to you. No marijuana in there? | |
| | Joseph: | (No.) | |
| | Trooper: | Any cocaine? | |
| | Joseph: | No. | |
| | Trooper: | No meth in there? | |
| | Joseph: | No. | |
| | Trooper: | Would you have a problem if I search the vehicle just to make sure? | |
| | Joseph: | Yes. | |
| | Trooper: | Yes, you would have a problem with that? | |
| | Joseph: | Yes, sir. | |
| | Trooper: | Okay, why's that? | |
| | Joseph: | 'Cuz it ain't my car. | |

00:28:38   Trooper: Would you have a problem with me      00:13:40
           searching the vehicle just to make sure?
           Joseph: Yes.
           Trooper: Yes, you would have a problem?
           Joseph: Yes.
           Trooper: Okay, why's that?
           Joseph: Because it ain't my car.

00:29:43   Trooper: Okay, Mr. Pierce. So after I'm telling      00:14:44
           you that, uh, you're in charge of the vehicle right
           now because you're driving it. And you're not gonna
           allow me uh to search the vehicle, is that correct?
00:29:55   Joseph: No, sir.                                     00:14:56

00:30:01   Trooper: Okay, here's what's gonna happen.          00:15:03
           I'm gonna call for a canine. K-9's gonna do a free
           air search of the vehicle. K-9 --- gives me probable
           cause to search the vehicle. If he doesn't, you're
           going down the road, okay?

PIERCE'S EXHIBIT 8(d)

App F

| | | |
|---|---|---|
| 01:14:52 | Trooper opens front passenger door | 00:59:51 |
| 01:18:47 | Trooper opens rear passenger door | 01:03:45 |
| 01:19:49 | Trooper opens front driver door | 01:04:04 |
| 01:20:00 | Trooper opens rear driver door | 01:04:58 |
| 01:26:10 | Trooper at rear, driver-side door, holding plastic bag and says to another Trooper: "It was in that bag right there, ---." (See PhotoExhibit 3) | 01:11:08 |

| | | | |
|---|---|---|---|
| 01:35:40 | Trooper 2: | What'd you stop him for? | 01:20:37 |
| | Trooper: | Driving on the ---. | |
| | Trooper 2: | Really? | |
| | Trooper: | Yeah. I --- | |
| | Trooper 2: | Did he? | |
| | Trooper: | --- looking back at me. I even told him, you looking back at me? | |

\* \* \*

"I declare nothing further.

*[signature]*

**Herbert Joe**, M.A., M.S., J.D., LL.M., C.F.C.,
B.C.F.E., D.A.B.F.E., D.A.B.L.E.E., F.A.C.F.E.
Managing Partner, Yonovitz & Joe, L.L.P.
Board Certified Forensic Audio/Video Examiner
Certified Forensic Consultant
Charter Member, Legal Advisory Board, American
        College of Forensic Examiners International
Diplomate, American Board of Forensic Examiners
Diplomate, American Board of Law Enforcement Experts
Fellow, American College of Forensic Examiners

Date:     23 June 2016
Place:    McLean, Fairfax County, VA



PIERCE'S EXHIBIT 8(f)